38906.   WOLFE v. CITY OF ALBANY.

DECIDED JULY 14, 1961—REHEARING DENIED JULY 28, 1961.

*Adair, Goldthwaite & Stanford, J. R. Goldthwaite, Jr.,* for plaintiff in error.

*H. Grady Rawls,* contra.

TOWNSEND, Presiding Judge. ■ The attacks launched against the ordinance in question on the grounds that it violated the First and Fourteenth amendments to the Constitution of the United States, the provisions of the National Labor Relations Act (29 U.S.C.A. § 151 et seq.) and of the Labor Management Reporting and Disclosure Act (29 U.S.C.A. § 504) need not be considered here for the reason that these grounds are restricted to the effect of the ordinance upon the rights of the defendant as a labor organizer only, and the present decision is not confined within that narrow category. Insofar, however, as the Federal statutes are concerned, the attacks are without merit for the reason that the defendant failed to show by competent proof that his solicitation of employees of A. & M. Karagheusian, Inc. was a matter involving interstate commerce. The only evidence that this employer, whose employees alone were solicited to become members of the Textile Workers Union of America, was engaged in interstate commerce was made by reference to a prior decision of the National Labor Relations Board dated August 14, 1959, containing a finding of fact from undisclosed testimony taken at a hearing of May 5, 1959, that such employer was engaged in interstate commerce. Not only is the finding of fact of that body not binding upon a judicial tribunal hearing a totally different case, but the decision of the NLRB relates to facts almost a year prior to the alleged offense here and, even if it could be otherwise considered, would have no probative value as of the

time of this infraction. Congress has no power to intrude in the field of purely intrastate commerce. Foster Brothers Mfg. Co. v. National Labor Relations Board, 85 F. 2d 984. Whether or not the activities of the employer are such that the impact of the labor controversy would affect interstate commerce is a fact to be determined in each case as it arises. Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453 (58 SC 656, 82 LE 954); Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197 (59 SC 206, 83 LE 126); National Labor Relations Board v. Mid-Co Gasoline Co., 172 F. 2d 974; National Labor Relations Board v. Vulcan Forging Co., 188 F. 2d 927. Accordingly, the first 9 grounds of attack in the plea in abatement are either without merit or are not passed upon.

■ Paragraph 11 specifically attacks Section 1 of the ordinance on the ground that it violates Article I, Sec. I, Par. XV of the Constitution of Georgia (*Code* § 2-115) guaranteeing the right of freedom of speech because the criminal sanction has no valid relationship to the protection of the public safety or welfare of the citizens of the municipality nor is there any other legally cognizable ground for restricting the privileges and immunities granted in the amendment. Paragraph 10 attacks conditions (a) and (b) of Section 2 of the ordinance on the same grounds. There is no specific attack on condition (c) requiring the payment of a license fee, and it will therefore be assumed that plaintiff in error impliedly admits that a regulatory or taxing measure, applied to a person whose occupation was that of a paid union organizer, may be upheld, if it does not in the Federal field infringe upon the limitations laid down in Hill v. Florida, 325 U.S. 538 (65 SC 1373, 89 LE 1782). In Stapleton v. Mitchell, 60 F. Supp. 51, 61, although a Kansas statute requiring payment of a $1.00 fee was struck down, it was nevertheless recognized that "when used as an economic weapon in the field of industrial relations or as coercive technique, speech, press and assembly are subject to reasonable regulation in the public interest and in that respect the state is the primary judge of the need, and it is not required to wait until the danger to the community which it seeks to avoid is 'clear and present.'" This reference

to the holding in Thomas v. Collins, 323 U.S. 516 (65 SC 315, 89 LE 430) points up the delicacy of any decision as to the right to exact a license fee as applied to labor organizers, where the right to free speech under the Constitutional guarantee is interposed against the right of a state or local government either to raise revenue or to promote public safety and good order within its boundaries, attempted to be carried out by taxing and licensing business occupations. That question, also, is not presented here because nothing in the ordinance under consideration reveals it to be either a revenue measure or one designed to regulate business occupations. It does not limit the class of persons to which it applies to those engaged in any trade or business; it does not restrict its application to paid solicitors of memberships nor to any particular type of organization and under its broad language any member of any social or fraternal organization who "shall solicit memberships in any club . . . where there is any charge for membership" would be equally guilty. See *Thomas v. City of Atlanta,* 59 Ga. App. 520 (1 SE2d 598). However, "it is as much the duty of this court to refrain from passing upon issues not embraced within the errors assigned as it is to decide those that are. That which lies beyond the exceptions is forbidden ground." *Clark v. Bandy,* 196 Ga. 546, 558 (27 SE2d 17). Because of the wording of the assignments of error neither the right to charge a license fee nor the question of the reasonableness of such fee will be specifically dealt with herein.

■ "The police power of the General Assembly is very broad, but must be exercised in subordination to the Constitution of this State." *Commissioners of Glynn County v. Cate,* 183 Ga. 111, 113 (1) (187 SE 636). "The police power is an attribute of sovereignty, and a necessary characteristic of every civilized government. It is inherent in the State of Georgia, and in municipal corporations where there have been express grants by the State through their charters. . . Therefore, unless a statute or ordinance passed by a duly-constituted legislative authority is violative of the limitations placed on the police power by the Constitution, or, as it is more commonly stated, is repugnant to the Constitution, it is not invalid." *DeBerry v. City of LaGrange,*

62 Ga. App. 74, 77 (8 SE2d 146). "Municipal ordinances must be reasonable. The limitations of the power of a city council in this regard are not to be measured by the more extensive powers of the State legislature." *Mayor &c. of Savannah v. Cooper*, 131 Ga. 670, 676 (63 SE 138). "Unless an act restricting the ordinary occupations of life can be said to bear some reasonable relation to one or more of these general objects of the police power [i.e., public health, safety, morality, and general welfare] it is repugnant to constitutional guaranties and void." *Bramley v. State*, 187 Ga. 826, 835 (2 SE2d 647).

The privileges granted by our Bill of Rights, the precious "jewels of liberty" to which we so frequently give lip service, are all too often ignored in the exigencies of particular factual situations, and it is for this reason among others that, perhaps at the risk of over-simplification, this court is deciding only one ground of the plaintiff in error's attack upon the validity of the ordinance in question in holding that the prior restraints placed upon this defendant or any other citizen within the City of Albany before he can lawfully invite other persons to join any club or association which charges dues (and indeed, what club or association does not?) constitute a denial of this Constitutional right to free speech. Free speech, like other basic liberties, can be defined less by words than by situations. It is to some extent relative. Free speech does not give one the right to malign another or do any act which is injurious to the person or property of another. Nor does it necessarily exempt one from regulation, license, or payment of tax which under some other theory of law is a protected public or private right. That which may be a permissible regulation even though it restricts the right of free speech to some extent must bear some genuine and reasonable relation to the general welfare, and to the public health, safety or morals. In other words, the right to free speech is a reasonable right limited only by conditions reasonably imposed for the benefit of society; the right exists except where the limitation clearly appears. It may be true that there are regulatory measures which a municipality may still lawfully impose upon the activities of paid solicitors for labor unions and which would be not only upheld as within the State Constitution but also as

within the purview of the Federal statutes. (See De Veau v. Braisted, 363 U.S. 144 (80 SC 1146, 4 LE2d 1109). As to such cases it was stated, In re Porterfield, 28 Cal. 2d 91 (168 P2d 706, 167 ALR 675): "Were it not for the direct application by the Supreme Court of the constitutional speech and assembly guaranties to the facts of the Thomas case [Thomas v. Collins, supra] there would seem to be little basis for arguing that the solicitation by Porterfield for compensation was not a business act subject to police regulation. . . The foregoing considerations, plus the fact that in the instant case the only restriction upon speech (other than that involved in the standards prescribed for issuance of the license . . .) is that which is incidental as a part of the regulation of paid solicitation, suggest the conclusion that the constitutional principle of free speech does not render wholly immune from reasonable regulation the profession or business of solicitation [for a labor union] in which petitioner is engaged."

But that is not the issue upon which this case is decided. This ordinance denies to all citizens of the City of Albany the right to request their friends to join any dues-paying association unless they first obtain a license for that purpose, and the grant of the license is conditioned, not only upon payment of a fee, but on the furnishing of statements that the applicant is of good moral character, that he has never violated any law, and that he has never joined any organization having "Communistic" beliefs. It was held in Herndon v. Lowry, 301 U.S. 242, 258 (57 SC 732, 81 LE 1066): "The limitation upon individual liberty must have appropriate relation to the safety of the state. Legislation which goes beyond this need violates the principle of the Constitution. If, therefore, a state statute penalize innocent participation in a meeting held with an innocent purpose merely because the meeting was held under auspices of an organization membership in which, or the advocacy of whose principles, is also denounced as criminal, the law, so construed and applied, goes beyond the power to restrict abuses of freedom of speech and arbitrarily denies that freedom." The words are no less true of the free speech guarantee of our State Constitution than of the First Amendment to the Federal Constitution. In *Haynes v.*

*City of Albany,* 29 Ga. App. 313 (115 SE 30) an ordinance placing a residence prohibition against any former inmate of a red light district unless she produced evidence of visible means of support or good moral character was held "in its spirit, if not in its letter . . . retroactive and unconstitutional, for then the offense is bottomed upon past acts." There is no basis for arguing that the ordinance is regulatory as to the nature of the organization, for it is comprehensive of them all whether good or bad; nor is there any basis for arguing that it is for the protection of the public against fraudulent solicitation of memberships, since many a former law violator, and even some hard pressed to establish evidence of present good morality, might ask others to join a worthy cause.

There being no reasonable relationship between the restraints imposed on freedom of speech and the general welfare of the community, the ordinance is unconstitutional. It was error for the judge of the superior court to dismiss the petition for certiorari.

*Judgment reversed. Frankum and Jordan, JJ., concur.*